UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
SEP 2 8 2018
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF N.Y.

STEPHEN R. MACINTYRE, and SCOTT E. SULLIVAN,

                Plaintiffs,

                v.

JACK W. MOORE, in his official capacity as supervisor, Town of Henrietta, and TOWN OF HENRIETTA (PUBLIC AGENCY),

                Defendants.

**DECISION AND ORDER**

6:15-CV-06660 EAW

## INTRODUCTION

*Pro se* Plaintiffs Stephen R. MacIntyre ("MacIntyre") and Scott E. Sullivan ("Sullivan") (collectively, "Plaintiffs") commenced this action on October 30, 2015, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), against defendant Jack W. Moore ("Moore"). (Dkt. 1). Following this Court's July 28, 2017, Decision and Order, dismissing the complaint and granting Plaintiffs leave to file an amended complaint (Dkt. 15), on September 15, 2017, Plaintiffs filed an amended complaint, alleging FLSA violations against Moore and defendant Town of Henrietta ("the Town") (collectively, "Defendants") (Dkt. 18). In addition, Plaintiffs added a new cause of action for unjust enrichment against Defendants. (*Id.* at 12-14).

Presently before the Court is Defendants' motion to dismiss, which seeks to dismiss both claims as asserted against Moore and to dismiss the unjust enrichment claim as

- 1 -

asserted against the Town. (Dkt. 20). For the following reasons, Defendants' motion is granted insofar as it seeks to dismiss Plaintiffs' unjust enrichment cause of action against both Defendants, but it is otherwise denied.

## FACTUAL BACKGROUND[1]

Plaintiffs were employed by the Town as Engineering Inspectors until their employment was terminated on January 23, 2015. (Dkt. 18 at 3). Plaintiffs were responsible for inspecting construction project sites to ensure that private developers adhered to the Town's standards. (*See id.* at 4-5). The Town classified Plaintiffs as independent contractors. (*Id.* at 3).

Plaintiffs were paid an hourly wage, but they received no employment benefits. (*Id.* at 4). Wage increases did not occur regularly, and "in one case, Plaintiffs waited several years for a wage increase." (*Id.*). The Town Engineer directed Plaintiffs' workload and priorities, and, as the years passed, Plaintiffs were required to take on additional office duties. (*Id.* at 5). Plaintiffs "would sometimes" work more than 40 hours a week, but as of 2012, Plaintiffs were not paid an overtime rate for those work hours exceeding the standard 40 hours per week. (*See id.* at 5-6). Plaintiffs were informed that the Town Board had decided to stop paying an overtime rate for qualifying work hours. (*Id.* at 5).

In 2013, the New York State Comptroller (the "Comptroller") completed an audit of the Town, entitled "Financial Management and Purchasing," which concluded that three individuals who performed construction site inspections, and one individual who provided

---

[1]     The following facts are taken from Plaintiffs' amended complaint (Dkt. 18), unless otherwise noted.

advice to the Town Supervisor "did not meet the majority of the 20 common law criteria for classification as independent contractors, and should likely have been treated as employees." (Dkt. 18-1 at 21 (the Comptroller's report); *see* Dkt. 18 at 7).[2] Plaintiffs hoped that they would eventually be reclassified as "Town Employees." (*See* Dkt. 18 at 7-8).

Subsequently, in January of 2014, Moore assumed the position of Town Supervisor. (*Id.* at 7). Beginning in October of 2014, Plaintiffs were asked to provide "a concept plan of what [they] would charge for inspection services if they began their own business." (*Id.* at 8). In December of 2014, Plaintiffs learned that the Town Engineer had been asked to compare the costs submitted by Plaintiffs with the costs of inspections performed by three engineering firms. (*Id.*). Plaintiffs also alleged that Moore had told an unidentified individual that he did not want to hire Plaintiffs as full-time employees because, "'I don't want to pay the benefits.'" (*Id.*). In January of 2015, Plaintiffs were notified that they would no longer be employed as Engineering Inspectors for the Town, and that the engineering firms would be utilized to satisfy the Town's needs. (*Id.*).

---

[2]     Plaintiffs appear to allege that they were among the four independent contractors studied by the Comptroller. (Dkt. 18 at 13 ("In 2013[,] the Office of the New York State Comptroller pointed out that the Plaintiffs were misclassified.")). However, the Comptroller's audit did not identify MacIntyre or Sullivan by name, and Plaintiffs fail to explain how the Comptroller's conclusions were directed at them specifically. Nonetheless, three of the independent contractors studied during the audit held job requirements similar to those allegedly held by Plaintiffs. (Dkt. 18-1 at 21 (noting that three of the independent contractors were responsible for "completing site visits for construction projects within the Town," and that each individual reported to the Town Engineer)).

In April of 2015, MacIntyre filed an unemployment claim with the New York State Department of Labor ("NYSDOL"). (*Id.* at 9). Although MacIntyre's claim was initially denied, he was given a form to complete on his administrative appeal that "addressed the terms and conditions" of his employment. (*Id.*). The NYSDOL subsequently approved MacIntyre's unemployment claim. (*Id.*).

Plaintiffs claim that they were misclassified as independent contractors because: (1) Plaintiffs' "services were crucial to the Town to ensure that the Town's construction standards were met"; (2) Plaintiffs "had no opportunity for profit or loss" in their positions as Engineering Inspectors; (3) "the tools required to perform the Town's inspection services were provided by the Town"; (4) Plaintiffs' positions as Engineering Inspectors "were fairly basic" and did not require "any specialized skills, licenses or certification"; (5) Plaintiffs held "continuous employment with the Town that lasted several years"; and (6) "Plaintiffs were expected to follow the same work schedule as regular town employees," and their work priorities and tasks were managed by the Town Engineer. (*Id.* at 9-11). Plaintiffs also claim that Moore and the Town each meet the definition of an "employer" under the FLSA. (*Id.* at 11-12).

Plaintiffs further allege that Defendants were unjustly enriched by Plaintiffs' performance of their job requirements. (*Id.* at 12). Plaintiffs argue that, by misclassifying them as independent contractors rather than employees, Defendants were able to save over $100,000 per year on salary payments and employment benefits. (*Id.* at 12-13). Plaintiffs allege that their relationship with Defendants was "wholly one-sided and existed without a mutually agreed, enforceable contract" (*id.* at 12), and that by failing to take action after

the Comptroller concluded that Plaintiffs were misclassified as independent contractors, Defendants did not act in good faith (*id.* at 13).

## PROCEDURAL HISTORY

Plaintiffs filed a complaint on October 30, 2015, alleging that Moore had violated the FLSA and ERISA. (Dkt. 1). On September 19, 2016, Moore filed a motion to dismiss for failure to state a claim. (Dkt. 4). On October 13, 2016, Plaintiffs filed a motion to amend/correct their initial complaint. (Dkt. 8). On July 28, 2017, the Court issued a Decision and Order granting Moore's motion to dismiss, but also granting Plaintiffs' motion for leave to file an amended complaint. (Dkt. 15).[3]

In dismissing Plaintiffs' original complaint, the Court noted that "Plaintiffs seek leave to add the Town of Henrietta as a defendant in this action." (*Id.* at 10). In their motion for leave to file an amended complaint, Plaintiffs indicated that the "[a]mended complaint needs to list 'Town of Henrietta' as a separate Defendant and not collectively as was shown on [the] original complaint. This change resolves an 'employer' issue crucial to the case." (Dkt. 8 at ¶ 6). The Court concluded that "[b]ecause Plaintiffs may be able to assert a plausible FLSA claim against the Town of Henrietta and/or Moore, they are granted leave to do so." (Dkt. 15 at 11). Plaintiffs were granted thirty days to amend their complaint "consistent with [the] Decision and Order." (*Id.* at 12).

---

[3]     Plaintiffs were not granted leave to amend their claim under ERISA, which was dismissed because Plaintiffs failed to "allege[] the existence of any employee benefit plan which is governed by ERISA." (Dkt. 15 at 10).

On September 15, 2017, Plaintiffs filed their amended complaint, asserting claims for the recovery of unpaid overtime under the FLSA as well as damages under a common law theory of unjust enrichment against Moore, in his official capacity as Town Supervisor, and the Town. (Dkt. 18). On October 25, 2017, Defendants filed a motion to dismiss, seeking the dismissal of the unjust enrichment claim as asserted against both Defendants, and the dismissal of the FLSA claim as asserted against Moore. (Dkt. 20). Plaintiffs have opposed Defendants' motion. (Dkt. 22).

## DISCUSSION

### I. Legal Standard

"In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion by "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal quotations and citations omitted).

## II. Plaintiffs' Unjust Enrichment Claim Must Be Dismissed

### A. Although Plaintiffs' Unjust Enrichment Claim Exceeds the Scope of the Court's Leave to Amend the Complaint, Plaintiffs are Excused Due to Their *Pro Se* Status

Defendants first argue that Plaintiffs' unjust enrichment claim should be dismissed because the assertion of this claim exceeds the scope of the Court's permission to amend as set forth in its July 28, 2017, Decision and Order. (Dkt. 20-1 at 10-12). "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012); *accord Willet v. City Univ. of N.Y.*, No. 94 CV 3873, 1997 WL 104769, at *2 (E.D.N.Y. Feb. 18, 1997) (dismissing several of the plaintiff's claims in the amended complaint because they were beyond the scope of the court's leave to amend); *Kuntz v. N.Y. State Bd. of Elections*, 924 F. Supp. 364, 366-67

(N.D.N.Y. 1996) (dismissing the plaintiff's claims that exceeded the scope of the court's permission to amend).

Here, the Court's July 28, 2017, Decision and Order instructed Plaintiffs that they were granted limited leave to file an amended complaint in order to add the Town as a defendant to this action. (Dkt. 15 at 10-11). The Court did not grant Plaintiffs leave to add new claims to their complaint. Nonetheless, Plaintiffs' amended complaint now alleges an entirely new cause of action for unjust enrichment. (Dkt. 18 at 12-14). Since this claim exceeds the limited scope of Plaintiffs' leave to amend, the Court would be justified in dismissing the claim on this ground. *See Pagan v. N.Y. State Div. of Parole*, No. 98 CIV. 5840 (FM), 2002 WL 398682, at *3 (S.D.N.Y. Mar. 13, 2002) (dismissing the plaintiff's new legal claims asserted in the amended complaint because the assertion of those claims exceeded the scope of the court's leave to amend the complaint); *Willett v. City Univ. of N.Y.*, No. 94 CV 3873, 1997 WL 104769, at *2 (E.D.N.Y. Feb. 18, 1997) (refusing to consider claims in amended pleading that were beyond the scope of the court's leave to amend); *Kuntz*, 924 F. Supp. at 366-67 (dismissing claims that exceeded the scope of the court's permission to amend).

"However, given [Plaintiffs'] *pro se* status, the Court declines to dismiss th[is] claim[] solely because [it] exceed[s] the scope of the leave granted." *Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351 (JPO) (SN), 2017 WL 2274485, at *5 n.3 (S.D.N.Y. May 24, 2017); *see Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, No. 12-CV-974 (KMK), 2015 WL 5729969, at *22 (S.D.N.Y. Sept. 30, 2015) ("Given Plaintiff's pro se status, and the Court's obligation to liberally construe pro se pleadings,

the Court is hesitant to dismiss Plaintiff's [Fourth Amended Complaint] and [Third Amended Complaint] on this ground."); *see also Moriates v. City of N.Y.*, No. 13-CV-4845 (ENV) (LB), 2016 WL 3566656, at *2 (E.D.N.Y. June 24, 2016) ("For *pro se* litigants, broad leave to replead is generally appropriate, since they lack the legal acumen and experience to differentiate successful claims from unsuccessful ones.").

Accordingly, the Court declines to dismiss Plaintiffs' unjust enrichment claim on the grounds that it exceeded the scope of the Court's leave to amend.

**B.    Plaintiffs Were Not Required to Serve a Notice of Claim as a Precondition to Asserting Their Unjust Enrichment Claim in this Action**

Defendants' second argument in support of dismissing Plaintiffs' unjust enrichment claim is equally unpersuasive.  Defendants argue that the Court should dismiss this claim because Plaintiffs failed to comply with the notice of claim requirements set forth in New York State's General Municipal Law §§ 50-e and 50-i.  (*See* Dkt. 20-1 at 12-14).  "As a general rule, 'state notice-of-claim statutes apply to state-law claims' asserted as pendant claims in a federal action."  *Yennard v. Herkimer BOCES*, 241 F. Supp. 3d 346, 366 n.10 (N.D.N.Y. 2017) (quoting *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)).  General Municipal Law § 50-e(1)(a) provides, in relevant part, as follows:

> In any case *founded upon tort* where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, . . . or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises. . . .

(emphasis added).  "New York state courts strictly construe Notice of Claim requirements." *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012) (citation omitted).

"[B]ecause timely service of a Notice of Claim is a 'condition precedent to commencement of a tort action against [a public corporation] or its employees, . . . failure to do so is grounds for dismissal.'" *Walker v. Vill. of Freeport*, No. 15-CV-4646 (JFB) (SIL), 2016 WL 4133137, at *9 (E.D.N.Y. June 13, 2016) (quoting *Excell v. City of N.Y.*, No. 12 Civ. 2874, 2012 WL 2675013, at *4 (E.D.N.Y. July 5, 2012)), *report and recommendation adopted*, No. 15-CV-4646 (JFB) (SIL), 2016 WL 4132252 (E.D.N.Y. Aug. 2, 2016).

However, "[u]nder Section 50-e notice is not necessary for equitable claims. . . ." *Torres v. LaLota*, No. CV15-7097 (JMA) (AYS), 2017 WL 4457514, at *8 (E.D.N.Y. Aug. 14, 2017) (citing *Schneider v. Town of Orangetown*, 175 Misc. 2d 899, 900 (App. Term 2d Dep't 1998) (stating that the "claim is clearly based on the theory of unjust enrichment[, and t]herefore, the notice of claim requirements of the General Municipal Law do not apply")), *report and recommendation adopted*, No. 15-CV-7097 (JMA) (AYS), 2017 WL 4443578 (E.D.N.Y. Sept. 30, 2017); *see NRP Holdings LLC v. City of Buffalo*, No. 11-CV-472S, 2015 WL 9463199, at *1 (W.D.N.Y. Dec. 28, 2015) (stating that "the notice provisions of New York's General Municipal Law apply only to tort claims, not causes of action sounding in contract," and that notice is "not required" in the context of "a quasi-contract claim"); *Finke v. City of Glen Cove*, 55 A.D.3d 785, 786 (2d Dep't 2008) ("The plaintiff's breach of implied contract and breach of license causes of action, however, are not subject to the notice of claim requirement."); *Stanford Heights Fire Dist. v. Town of Niskayuna*, 120 A.D.2d 878, 879 (3d Dep't 1986) ("Whether plaintiff was required to file a notice of claim depends on the nature of the relief sought, for the statutory requirements pertain only to tort claims, not claims in equity or for breach of contract."); *see also*

*Santangelo v. City of New York*, No. 16-CV-5604 (PKC) (LB), 2017 WL 4357335, at *8 n.8 (E.D.N.Y. Sept. 29, 2017) (noting that the defendants did not argue that the notice of claim provisions of General Municipal Law §§ 50-e and 50-i applied, and stating, "[p]resumably that is because the general notice of claim requirements under NYGML §§ 50-e and 50-i apply only to actions grounded in tort and, therefore, do not apply to Plaintiff's claim for breach of contract"); *Hoydal v. City of New York*, 154 A.D.2d 345, 346 (2d Dep't 1989) (stating that "[t]he essence of the plaintiffs' claim sounds in contract, not in tort," and "[t]herefore, no notice of claim was required to be served upon the defendant under General Municipal Law § 50-e"). Since Plaintiffs have alleged a cause of action for unjust enrichment, which sounds in equity and quasi-contract, Plaintiffs were not required to satisfy the notice of claim requirements of General Municipal Law § 50-e. *See Cangemi v. United States*, 939 F. Supp. 2d 188, 201 (E.D.N.Y. 2013) (stating that a notice of claim "is not necessary for equitable claims, such as unjust enrichment"); *see also Matteawan on Main, Inc. v. City of Beacon*, 84 A.D.3d 1183, 1185 (2d Dep't 2011) (stating that the notice of claim provisions of General Municipal Law § 50-e apply to tort claims, but not to a claim that "sounds in quasi-contract"); *E. Williamson Roofing & Sheet Metal Co. v. Town of Par.*, 139 A.D.2d 97, 109 (4th Dep't 1988) ("The doctrine of unjust enrichment is . . . equitable in nature."); *see generally Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.").

While it is true that the notice of claim requirement "may not be evaded by resort to [an action upon the equitable principle of unjust enrichment] . . . instead of an action in

tort," *Smith v. Scott*, 294 A.D.2d 11, 17 (2d Dep't 2002), Defendants fail to point out any allegations in the amended complaint that "characterize Plaintiffs' unjust enrichment claim as sounding in tort," and thus, "the general rule that Plaintiffs need not file a notice of claim for their unjust enrichment claim" applies to this action, *D'Antonio v. Metro. Transp. Auth.*, No. 06 CV 4283 (KMW), 2008 WL 582354, at *7 n.19 (S.D.N.Y. Mar. 4, 2008); *cf. Silberstein v. Westchester County*, 92 A.D.2d 867, 867 (2d Dep't 1983) (finding that the "plaintiff's claim sounds in tort rather than contract," and "[s]ince plaintiff's action sounds in tort and plaintiff failed to comply with sections 50-e and 50-i of the General Municipal Law, his complaint should have been dismissed"), *aff'd*, 62 N.Y.2d 675 (1984); *Rand v. City of New York*, 47 A.D.2d 937, 938 (2d Dep't 1975) (stating that the plaintiff's "fourth cause of action, phrased in terms of unjust enrichment, was properly dismissed" because "the complaint is premised upon a trespass," and thus, "plaintiff must be held to the statutory notice of claim requirement set forth in section 50-e").[4]    Having found Defendants' procedural challenges to Plaintiffs' unjust enrichment cause of action unpersuasive, the Court now turns to whether Plaintiffs have sufficiently stated such a claim in their amended complaint.

---

[4]    Furthermore, because Plaintiffs' unjust enrichment claim is "not [a] personal injury, wrongful death, or damage to personal property claim[] under section 50-i," *Margerum v. City of Buffalo*, 24 N.Y.3d 721, 730 (2015), the notice of claim requirements under that section of New York's General Municipal Law are equally inapplicable, *see, e.g.*, *Santangelo*, 2017 WL 4357335, at *8 n.8; *NRP Holdings LLC*, 2015 WL 9463199, at *1.

## C. Plaintiffs' Unjust Enrichment Claim is Barred Because of an Existing Contractual Relationship Between Plaintiffs and Defendants

"Federal courts sitting in diversity or exercising supplemental jurisdiction apply state substantive law and federal procedural law." *Pop Bar, LLC v. Fellows*, No. 12 CIV. 06647 (TPG), 2013 WL 4446227, at *6 (S.D.N.Y. Aug. 19, 2013); *see Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 CIV. 704 (RPP), 2005 WL 1214281, at *8 n.14 (S.D.N.Y. May 20, 2005) ("In applying supplemental jurisdiction, federal courts must apply the forum state's substantive law to the state claims." (citing *Promisel v. First Am. Artificial Flowers*, 943 F.2d 251, 257 (2d Cir.1991))). "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant was benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citing *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983)).

"The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation that the law creates *in the absence of any agreement.*" *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (quoting *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)). "New York law 'precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact.'" *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017) (quoting *Green Tree Servicing, LLC v. Christodoulakis*, 689 F. App'x 66, 71 (2d Cir. 2017)); *see Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388-89 (1987) ("The existence

of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contracts for events arising out of the same subject matter. . . . Briefly stated, a quasi-contractual obligation is one imposed by law *where there has been no agreement or expression of assent, by word or act, on the part of either party involved.*" (citations omitted)).

However, an unjust enrichment claim can survive, even in the face of a written agreement, if a dispute exists concerning the validity of the underlying contract. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 458-59 (S.D.N.Y. 2016) ("While the existence of a contract generally bars recovery based on the quasi-contract theory of unjust enrichment, a claim for unjust enrichment may survive a motion to dismiss where the plaintiff challenges the contract's validity." (citations omitted)).

The underlying contract between the parties need not be a formal, written agreement. Even absent a formal, written contract between the parties, "[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, . . . and is derived from the 'presumed' intention of the parties as indicated by their conduct." *Jemzura v. Jemzura*, 36 N.Y.2d 496, 503-04 (1975) (citations omitted). As such, an individual's performance of services can indicate the existence of an implied-in-fact contract in the absence of a signed agreement. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) (noting that an implied-in-fact contract existed where the plaintiff "performed teaching services pursuant to the terms of the letter appointments, indicating her assent to be bound by them," even though she

never signed them), *superseded by statute on other grounds, as recognized in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108-09 (2d Cir. 2013).

Here, there exists some dispute regarding the existence of a formal employment agreement between Plaintiffs and Defendants. Plaintiffs acknowledge that MacIntyre eventually signed a labor contract, but they argue that he "worked for many years before being told he had to sign the contract. . . ." (Dkt. 22 at 5). Plaintiffs further contend that Sullivan never signed a labor contract. (*Id.*).

Nevertheless, Plaintiffs do not dispute that an implied-in-fact agreement existed between themselves and Defendants to render inspection services in exchange for compensation. Indeed, Plaintiffs' allegations establish that they worked as Engineering Inspectors for years, conducting inspection services on behalf of the Town, abiding by the Town's regulations and requirements, and receiving payment for their services. (*See* Dkt. 18 at 3-4, 12 (referencing and discussing the employment relationship that existed between themselves and Defendants)). Taking the facts and circumstances alleged in the amended complaint as true, it seems quite clear that—at the very least—an implied-in-fact contract existed between the parties. *See, e.g., Jemzura*, 36 N.Y.2d at 503-04; *see also Derven v. PH Consulting, Inc.*, 427 F. Supp. 2d 360, 368 (S.D.N.Y. 2006) ("As a general rule, the course of conduct between parties can, and must, be analyzed to determine whether there was a meeting of the minds sufficient to form an enforceable contract. . . . In this case, plaintiff's long employment history is more than sufficient to provide the basis for plaintiff's breach of contract claim." (citations omitted)). Even if a written contract did not exist for some time between MacIntyre and Defendants, and never at all in Sullivan's case,

Plaintiffs' alleged conduct—performing inspections and filling out time sheets—indicates an intent to be bound by an informal relationship with Defendants and supports an inference that an implied-in-fact contract existed. *See Leibowitz*, 584 F.3d at 507 (determining that an implied-in-fact contract existed where the plaintiff performed teaching services that manifested her intent to be bound by an employment agreement); *see generally Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94 (1999) ("The conduct of a party may manifest assent if the party intends to engage in such conduct and knows that such conduct gives rise to an inference of assent."); *cf. Praedia Realty Corp. v. Durst*, 233 A.D.2d 380, 381 (2d Dep't 1996) ("[T]he plaintiff failed to show that Sassco accepted the plaintiff's services upon the understanding that the latter expected compensation from Sassco.").

Plaintiffs argue that any such expressed or implied-in-fact agreement between themselves and Defendants was carried out "in a capricious and unfair manner." (Dkt. 22 at 5). In their amended complaint, Plaintiffs allege that they did not "have any real negotiating power other than to quit working for the Town." (Dkt. 18 at 4). The amended complaint states that the "employment relationship between the Plaintiffs and the Defendants was wholly one-sided and existed without a mutually agreed, enforceable contract." (*Id.* at 12). Plaintiffs allege that "[t]he Town set the rate of pay for services and denied the Plaintiffs [the] ability to negotiate on their behalf." (*Id.*). Plaintiffs further allege that "Defendants did not act in good faith" by continuing to classify Plaintiffs as independent contractors, despite having notice from the New York State Comptroller that Plaintiffs were likely "misclassified" as such. (*Id.* at 13).

Plaintiffs' allegations of a disparity in bargaining power are insufficient to undermine the enforceability of any contract. *See Ellinghaus v. Educ. Testing Serv.*, No. 15-CV-3442 (SJF)(AKT), 2016 WL 8711439, at *6 (E.D.N.Y. Sept. 30, 2016) ("While there may be some disparity in bargaining power between a high school student registering for the SAT and [the d]efendants, such disparity alone does not render a contract void."); *Filho v. Safra Nat'l Bank of N.Y.*, No. 10 CIV. 7508 (JFK), 2014 WL 12776165, at *10 (S.D.N.Y. Mar. 11, 2014) ("Mere disparity in bargaining power, by itself, does not make an otherwise valid contract unenforceable." (citing *Rosenfeld v. Port Auth. of N.Y. & N.J.*, 108 F. Supp. 2d 156, 165 (E.D.N.Y. 2000) (noting that a disparity in bargaining power exists with "the vast majority of form contracts, including those that are enforceable"))); *Dalton v. Educ. Testing Serv.*, 155 Misc. 2d 214, 222 (N.Y. Sup. Ct., Queens County 1992) ("Standardized contracts are not . . . unenforceable merely because of the inequality of bargaining power of the parties, without additional proof of unconscionability or violation of public policy."); *K.D. v. Educ. Testing Serv.*, 87 Misc. 2d 657, 663 (Sup. Ct., N.Y. County 1976) ("[W]hile plaintiff's description of the agreement herein as a contract of adhesion may be justified, his conclusion that it is therefore void, is not."). Of course, "[a]n agreement is unenforceable when it is unconscionable." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002) (citing *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988)). "Under New York law, a provision of a contract may be unconscionable 'only where it is both procedurally and substantively unconscionable when made.'" *Wework Cos. Inc. v. Zoumer*, No. 16-CV-457 (PKC), 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016) (quoting *NML Capital v. Republic of Argentina*, 621 F.3d 230,

237 (2d Cir. 2010)).  But Plaintiffs' allegations of disparate bargaining positions fail to raise a plausible inference of unconscionability.  While Plaintiffs also allege that Defendants failed to act in good faith by ignoring the Comptroller's conclusion that Plaintiffs "likely" have been misidentified as independent contractors instead of employees, Plaintiffs do not allege that Defendants misrepresented the contents of the Comptroller's audit or in any way misused it to pressure Plaintiffs into continuing their relationship with the Town under either an expressed or implied-in-fact agreement.

The Court acknowledges that where "the validity or enforceability of a contract" is questioned, a cause of action for unjust enrichment may proceed past the motion to dismiss stage. *Gao v. JPMorgan Chase & Co.*, No. 14 CIV. 4281 PAC, 2015 WL 3606308, at *5 (S.D.N.Y. June 9, 2015); *see Dragushansky v. Nasser*, No. 12 CV 9240 TPG, 2013 WL 4647188, at *9 (S.D.N.Y. Aug. 29, 2013) ("[G]iven that defendants challenge the validity of the agreement and the case is at the motion to dismiss stage, plaintiffs should be able to allege unjust enrichment in the alternative.").  Nonetheless, in order to avoid dismissal, there must be a "*bona fide dispute* regarding the validity or enforceability of a contract." *Structured Capital Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 831 (S.D.N.Y. 2016) (emphasis added); *cf. Nakamura v. Fujii*, 253 A.D. 2d 387, 390 (1st Dep't 1998) (stating that since there was "a bona fide dispute . . . as to the existence of the contract," the plaintiff's quasi-contract theory of liability would not be dismissed on the defendants' motion to dismiss).  Since Plaintiffs have not set forth sufficient factual allegations to support a plausible inference that their employment agreements—implied-in-fact or

otherwise—were unenforceable, their conclusory allegations fail to raise a "bona fide dispute" as to the validity of these agreements.

The allegations in the amended complaint establish that valid and enforceable implied-in-fact agreements to perform inspection services in exchange for compensation existed between Plaintiffs and Defendants. *See Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 148 (D. Conn. 2015) (finding that the plaintiff "failed to allege facts necessary for an unjust enrichment claim" where he neither "claimed that the contract is void, illusory or other unenforceable" nor has he "alleged facts in support of these legal conclusions"). Since Plaintiffs have failed to set forth sufficient factual allegations demonstrating a "bona fide dispute" as to the agreements' validity, Plaintiffs' unjust enrichment claim is barred by the existence of valid contracts covering the subject matter of their cause of action. *See Beth Isr. Med. Ctr.*, 448 F.3d at 587 ("*Clark-Fitzpatrick* precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact."); *see also Jemzura*, 36 N.Y.2d at 504 (stating that an implied-in-fact contract "is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct"); *see generally Clark-Fitzpatrick*, 70 N.Y.2d at 388 (stating that a valid contract generally bars a related unjust enrichment claim).

In other words, the arrangement between Plaintiffs and Defendants may have violated the FLSA, and thus a statutory remedy may be available to Plaintiffs. However, there was an arrangement or agreement between the parties, and therefore, any claim for

unjust enrichment cannot survive. As a result, Plaintiffs' claim for unjust enrichment is dismissed.

### III. Plaintiffs' Claims Against Moore, in His Official Capacity, Are Dismissed as Redundant

"A suit against an individual in his or her official capacity is 'to be treated as a suit against the entity [of which an officer is an agent].'" *Gazzola v. County of Nassau*, No. 16-CV-0909 (ADS) (AYS), 2016 WL 6068138, at *4 (E.D.N.Y. Oct. 13, 2016) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 385 n.35 (S.D.N.Y. 2012) (collecting cases).

Here, Plaintiffs filed their amended complaint against the Town and against Moore, "in his official capacity as supervisor." (Dkt. 18). Accordingly, the Town is the "real party in interest" in this case. *See Graham*, 473 U.S. at 166 (stating that a claim brought against a person acting in his or her official capacity "is *not* a suit against the official personally, for the real party in interest is the entity [that the individual represents]"). In other words, Plaintiffs' claims against Moore in his official capacity should be treated as claims against the Town. *See id.* Therefore, to the extent Plaintiffs assert their remaining FLSA cause of action against Moore in his official capacity, that claim is dismissed as redundant and duplicative of the FLSA claim asserted against the Town. *See Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch., USFD*, No. 14 Civ. 9696 (JCM), 2017 WL 4221455, at *22

(S.D.N.Y. Sept. 20, 2017) (dismissing the plaintiffs' claims against individuals acting in their official capacity as superintendent and principal of a school as "duplicative" of the plaintiffs' claims against the entity itself); *Zuk v. Onondaga County*, No. 5:07-CV-732 (GTS/GJD), 2010 WL 3909524, at *11-12 (N.D.N.Y. Sept. 30, 2010) (dismissing claims against individual defendants in their official capacity as duplicative of the action against the county defendant); *DeJean v. County of Nassau*, No. CV-06-6317 (SJF)(AKT), 2008 WL 111187, at *5 (E.D.N.Y. Jan. 8, 2008) ("Since the County is named in the complaint, the claims against [two individual defendants], in their official capacities, are dismissed as duplicative and redundant." (citation omitted)); *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) (stating that "a suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent," and thus, concluding that "it would be redundant to allow the suit to proceed against the City of Buffalo and the individual city officials in their official capacities").

## IV.     Moore is an "Employer" for Purposes of the FLSA

### A.     The Court Construes Plaintiffs' Amended Complaint as Naming Moore in His Individual Capacity as Well as His Official Capacity

Defendants' motion papers imply that Plaintiffs' allegations could be construed as alleging a FLSA claim against Moore in his official capacity as well as his individual capacity. (Dkt. 20-1 at 17 ("To the extent it can be construed that Plaintiffs' specific allegations about Mr. Moore evidence their intent to bring a claim against him individually as an employer, such claim fails for multiple reasons.")). Plaintiffs' amended complaint expressly names Moore in his "official capacity" (Dkt. 18 at 1), and Plaintiffs' opposition

papers to Defendants' motion do not further elaborate on this issue. Nonetheless, "[i]t must be remembered that plaintiff is proceeding *pro se* and as such [the Court] must afford his complaint a liberal reading." *Rivera v. Warden of M.C.C., N.Y.*, No. 95 CIV. 3779 (CSH), 2000 WL 124809, at *2 (S.D.N.Y. Feb. 2, 2000).

> The Court of Appeals has instructed that the failure to assert claims against defendants in their individual capacities generally does not warrant outright dismissal at the pleading stage because "[i]n many cases, a complaint against public officials will not clearly specify whether officials are sued personally, or in their official capacity, or both, and only [t]he course of the proceedings will indicate the nature of the liability to be imposed."

*George v. Lorenzo*, No. 98 CIV. 0769 (LAP), 1999 WL 397473, at *2 (S.D.N.Y. June 15, 1999) (quoting *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252 (2d Cir. 1991)).

Although the amended complaint only names Moore in his official capacity, "the Court will liberally construe the complaint as alleging claims against [Moore] in both [his] individual and official capacities." *Tulloch v. Erie Cty. Holding Ctr.*, No. 10-CV-0207S, 2010 WL 2609054, at *2 n.2 (W.D.N.Y. June 24, 2010) (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[T]he pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they could suggest." (quotation marks omitted))); *Ramos v. Artuz*, No. OO CIV 0149 LTS HBP, 2001 WL 840131, at *5 (S.D.N.Y. July 25, 2001) ("At least at the stage of a Rule 12 motion, where a *pro se* complaint is ambiguous, it should be construed as asserting claims against the defendants in both their official and individual capacities."); *Green v. Wing*, No. 94 CIV. 6217 (HB), 1996 WL 383138, at *3 (S.D.N.Y. July 9, 1996) (acknowledging that while the defendants "claim that Green conceded that he is only suing defendants in their official capacity," the

court will liberally construe the *pro se* plaintiff's "pleadings as if he is suing defendants in their individual capacities"); *see also Evering v. Rielly*, No. 98 CIV. 6718, 2001 WL 1150318, at *12 (S.D.N.Y. Sept. 28, 2001) ("Plaintiff's use of the Defendants' official titles in her pleadings is not enough to show that she intended to sue them only in their official capacities.").

In addition, Defendants will not be prejudiced if the Court reads the amended complaint as alleging a FLSA claim against Moore in his individual capacity because Defendants have anticipated that the Court might so construe the amended complaint in their motion papers. (Dkt. 20 at 17); *see Smith v. Johnson*, No. 99-CV-6601 VCJS, 2004 WL 1638192, at *6 (W.D.N.Y. July 22, 2004) (noting that "since [the] plaintiff filed this suit, the defendants have treated it as if he were suing defendants in their individual capacities," and finding that due to the plaintiff's *pro se* status, the court will treat the "plaintiff's claims as against [the] defendants in their individual capacities"). Therefore, the Court treats Plaintiffs' amended complaint as asserting a FLSA claim against Moore in both his official and individual capacities. Accordingly, the Court turns to address whether Moore can be held individually liable as an "employer" under the FLSA.

### B.    A Public Official May be Held Individually Liable as an Employer Under the FLSA

The FLSA provides for a minimum hourly wage, 29 U.S.C. § 206(a), and requires employers to pay overtime if an employee works more than 40 hours in a workweek, *id.* § 207(a).

> [T]he statute "defines the verb 'employ' expansively to mean 'suffer or permit to work.'"  Unfortunately, however, the statute's definition of

"employer" relies on the very word it seeks to define: "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The statute nowhere defines "employer" in the first instance.

*Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (internal citations omitted).

Although the Second Circuit has repeatedly endorsed the notion that individuals may be liable as employers under the FLSA, *see id.* at 117 (finding the chairman, president, and chief executive officer of a private corporation individually liable as an employer); *Velez v. Sanchez*, 693 F.3d 308, 331 (2d Cir. 2012) (stating that an individual who engaged a domestic servant in her household could be an employer under the FLSA); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (finding the chairman of the board of directors of a company personally liable as an employer under the FLSA), no Second Circuit case has determined whether a public-sector official can be held individually liable as an employer under the FLSA. The Court's research also has not identified any district court in this Circuit that has interpreted the FLSA as imposing individual liability on a public-sector official. However, at least four district court decisions within the Second Circuit have recognized individual liability against public employees under the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"). *See, e.g., Tiffany v. N.Y. State Veteran's Home*, No. 3:15-cv-0108 (MAD/DEP), 2015 WL 4460968, at *11 (N.D.N.Y. July 21, 2015); *Santiago v. Dep't of Transp.*, 50 F. Supp. 3d 136, 150-51 (D. Conn. 2014); *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 201-02 (D. Conn. 2012); *Smith v. Westchester County*, 769 F. Supp. 2d 448, 476 (S.D.N.Y. 2011). These findings are relevant because "[i]n assessing individual liability under the FMLA, district courts within

the Second Circuit have applied the FLSA test of 'whether, as a matter of economic reality, an entity is an employer for purposes of the FLSA' to the FMLA because the FMLA definition of employer 'tracks that of the FLSA.'" *Smith*, 769 F. Supp. 2d at 475.

Courts in other circuits have reached differing conclusions as to whether a public official may be found individually liable under the FLSA or the FMLA. *Compare Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003) (holding "that the FMLA's individual liability provision does not extend to public agencies" and noting "that this Court has never extended individual liability to public employees under the FLSA"), *and Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999) ("[T]he law of this circuit [is] that a public official sued in his individual capacity is not an 'employer' subject to individual liability under the FLSA."), *with Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012) ("Because the FLSA explicitly provides that an employer includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency,' we agree that the FMLA similarly permits individual liability against supervisors at public agencies."), *Modica v. Taylor*, 465 F.3d 174, 186-87 (5th Cir. 2006) ("We have previously held that a sheriff is an employer for purposes of the FLSA. Therefore[,] our conclusion that [the] plain language of the FMLA permits public employees to be held individually liable is consistent with our holding in *Lee*." (citation omitted)), *and Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) (noting that while "we have not directly addressed the issue of individual liability for public officials under either the FLSA or the FMLA[,] . . . [w]e see no reason to distinguish employers in the public sector from those in the private sector" under the FMLA); *see also Luder v. Endicott*, 253

F.3d 1020, 1022 (7th Cir. 2001) (noting that while "[t]he Eleventh Circuit has held that a public officer sued in his individual capacity cannot be an employer because it is only in his official capacity that he has authority over the employees' terms of employment[,] . . . we think that this cannot be right, as it would imply that a police officer who used excessive force against a person he was arresting could not be sued in his individual capacity because it was only by virtue of his office that he had the authority to make the arrest").

Defendants "urge this Court to apply the rationale of the Eleventh and Sixth Circuits . . . and find that a public official like [Moore] cannot be subject to individual liability under the FLSA." (Dkt. 20-1 at 20). However, Defendants' motion papers offer little substantive analysis of the *Mitchell* and *Wascura* cases. A critical review of *Mitchell* reveals that the Sixth Circuit was primarily concerned with the construction of the FMLA, not the FLSA. In addition, an examination of *Wascura* indicates that the Eleventh Circuit failed to undertake a textual analysis of the FLSA, finding itself bound by principles set forth in prior precedent—principles that should no longer be considered good law in light of prevailing Supreme Court precedent. Furthermore, Defendants fail to explain why this Court should consider the positions of the Sixth and Eleventh Circuits more favorably than the contrary viewpoints espoused in opinions originating from several other circuits. For these reasons and those that follow, the Court declines to follow *Mitchell* and *Wascura*, and instead, joins with the majority view in holding that a public official may be found individually liable as an "employer" under the FLSA.

Initially, the Court notes that "the remedial nature of the [FLSA] . . . warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact

in the national economy.'" *Herman*, 172 F.3d at 139 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Indeed, "[t]he Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." *Id.* (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). In determining whether or not a public-sector official falls within the FLSA's expansive definition of an "employer," the Court need only look to the plain language of the statute.

The FLSA broadly defines an "employer" as "*any person* acting directly or indirectly in the interest of an employer in relation to an employee and *includes a public agency*," and only excludes "labor organization[s] (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization" from its reach. 29 U.S.C. § 203(d) (emphases added); *see Wisniewski v. Town of Columbus*, No. CV-09-28-BLG-CSO, 2009 WL 10701744, at *6 (D. Mont. Nov. 18, 2009) (noting that labor organizations are "the only entities expressly excluded from the otherwise broad definition of employer"). In addition, a "person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," 29 U.S.C. § 203(a), and a "public agency" is defined as "the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Regulatory Commission), a State, or a political subdivision of a State; or any interstate governmental agency," *id.* § 203(x).

"It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms." *Lee v. Bankers Tr. Co.*,

166 F.3d 540, 544 (2d Cir. 1999) (citation omitted); *see Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (quotation marks omitted)). The FLSA's statutory command is abundantly clear; public-sector officials unambiguously fall within the scope of the FLSA's definition of an "employer," and the Court sees "no reason to distinguish employers in the public sector from those in the private sector." *Darby*, 287 F.3d at 681. As one district court aptly stated, "[t]he simplest and plain reading of the FLSA leads the Court to conclude that public employees who act directly or indirectly in the interest of an employer, including a public agency employer, in relation to an employee, may be held individually liability under the [FLSA]." *Fraternal Order of Police Barkley Lodge # 60, Inc. v. Fletcher*, 618 F. Supp. 2d 712, 721 (W.D. Ky. 2008); *see Wisniewski*, 2009 WL 10701744, at *7 ("In light of the FLSA's plain language . . . and the sound reasoning from those courts that have concluded that individual liability is possible under the FLSA, the Court believes that the Ninth Circuit likely would conclude that public officials are subject to individual liability as 'persons' under the FLSA if they otherwise satisfy the FLSA's definition of 'employer.'"). Indeed, "[t]he Court senses that the [c]ourts who ruled otherwise have not based their decision on the plain language of the statute." *Fletcher*, 618 F. Supp. 2d at 721; *Wisniewski*, 2009 WL 10701744, at *7 (finding *Mitchell* and *Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995) unpersuasive "primarily because they do not account for the FLSA's plain language"); *see also Teasdell v. Dist. of Columbia*, No. CV 15-0445 (ABJ), 2016 WL 10679536, at *6 (D.D.C. Sept. 16, 2016) (acknowledging that while "[t]he

D.C. Circuit has not weighed in on this issue," the defendants' position that "Congress never intended to impose individual liability on public employers under the FLSA" is "contrary to the plain language of the statu[t]e" (quotation marks omitted)).

For example, in *Wascura*, the Eleventh Circuit relied on its previous decision in *Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995), which determined that certain county commissioners were not "employers" of the plaintiff, who worked as a dispatcher for the county sheriff's department, as defined by the Equal Pay Act. *See id.* at 1011. In doing so, the *Welch* court considered various factors that had bearing on the plaintiff's "total employment situation." *Id.* (quotation marks and citation omitted). Subsequently, the *Wascura* court noted that "[t]he Equal Pay Act is simply an extension of the FLSA and incorporates the FLSA's definition of 'employer.'" 169 F.3d at 686. Without engaging in any further inquiry, the Eleventh Circuit simply stated that "*Welch* establishes as the law of this circuit that a public official sued in his individual capacity is not an 'employer' subject to individual liability under the FLSA," and concluded that "[b]ecause 'employer' is defined the same way in the FMLA and FLSA, *Welch* controls this case." *Id.*

Courts in other circuits have criticized *Wascura* and *Welch* for various reasons. *See, e.g., Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 477 (W.D. Pa. 2008) ("*Welch*'s holding that a public official, even if he can hire and fire, cannot be an employer in his individual capacity because he only has authority to act in his official capacity, 'had been swept away by the Supreme Court' . . . before both *Welch* and *Wascura* were decided." (quoting *Luder*, 253 F.3d at 1022 ("[T]he distinction on which the Eleventh Circuit relied had been swept away by the Supreme Court in *Hafer v. Melo*, 502 U.S. 21, 28, 112 S.Ct.

358, 116 L.Ed.2d 301 (1991), which neither of the Eleventh Circuit cases cited.")));

*Morrow v. Putnam*, 142 F. Supp. 2d 1271, 1275 (D. Nev. 2001) (stating that neither

*Wascura* nor *Welch* "explain why public officials should be exempted from liability while

managers in the private sector are not"). This Court joins these courts in declining to follow

*Wascura* and *Welch*. *Wascura* carries minimal persuasive force given that the *Wascura*

court was "bound by the *Welch* decision regardless of whether [it] agree[d] with it," 169

F.3d at 687, and thus, it "did not engage in a textual analysis of the FMLA," *Mason v.*

*Mass. Dep't of Envtl. Prot.*, 774 F. Supp. 2d 349, 361 n.101 (D. Mass. 2011). Furthermore,

the *Welch* decision is predicated upon an outmoded principle of law, and it failed to point

to any aspect of the FLSA's statutory text or structure that would support the notion that

public officials could not be held individually liable as "employers."

    Defendants' reliance upon *Mitchell* is also misplaced. Although the Sixth Circuit

noted that it had "never extended individual liability to public employees under the FLSA,"

*Mitchell*, 343 F.3d at 832, the *Mitchell* decision was primarily concerned with the FMLA.

In concluding that "the FMLA's text and structure reveals that the statute does not impose

individual liability on public agency employers," the Sixth Circuit relied on three factors.

*Id.* at 829. First, the *Mitchell* court noted that the FMLA's definition of an "employer"

"explicitly separates the individual liability provision and public agency provision into two

distinct clauses," and thus, the "structure" of § 2611(4) of the FMLA "patently

demonstrates that the individual liability provision and public agency provision are

separate and distinct." *Id.* at 829-30. Secondly, the Sixth Circuit relied upon the text of

§ 2611(4)(A). *Mitchell* emphasized that § 2611(4)(A) was delineated into several

additional clauses, and concluded that "the term employer 'means' what is included in clause (i) and 'includes' what is provided in clauses (ii), (iii), and (iv)," and that to hold otherwise would "render[] other provisions of the statute superfluous." *Id.* at 830. Lastly, the *Mitchell* court looked to the FLSA for further guidance. However, while many courts look to the FLSA when interpreting the FMLA—and vice versa—due to the similarities between the two statutes, the *Mitchell* court appears to have done so due to a perceived dissimilarity. Specifically, *Mitchell*, relying on an out-of-circuit district court opinion, endorsed the view that Congress "explicitly took 'Public Agency' out of the private employer definition [in the FMLA] and disconnected it from liability based on a person acting directly or indirectly in the interest of an employer." *Id.* at 832 (quoting *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 775 (M.D.N.C. 2000)). According to *Mitchell* and *Keene*, Congress remedied any ambiguity regarding the liability of public officials as employers under the FMLA by altering its definition in relation to the FLSA, "as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA." *Id.* (quoting *Keene*, 127 F. Supp. 2d at 775); *see Mason*, 774 F. Supp. 2d at 365 ("Had Congress intended the FMLA and FLSA's definitions of 'employer' to be identical, the *Mitchell* court argued, it would have expressly adopted the FLSA's definition.").

The Sixth Circuit's analysis in *Mitchell* has been extensively criticized by courts in other circuits. *See Modica*, 465 F.3d at 185-86 (rejecting each one of *Mitchell*'s three factors); *Mason*, 774 F. Supp. 2d at 364 ("[A]n interpretation that holds supervisors of public agencies individually liable is not redundant, particularly given that holding a supervisor in the private sector liable yields an identical result."); *Hayduk*, 580 F. Supp. 2d

at 476 ("*Mitchell's* reading of 29 U.S.C. § 2611(4)(A) is, to this Court, completely at odds with the words of the statute, grounded as it is in an extended analysis of the significance of the 'em dash' and alleged redundancies that are simply not contained in the plain language."); *Hewett v. Willingboro Bd. of Educ.*, 421 F. Supp. 2d 814, 819 (D.N.J. 2006) ("[I]n light of Section 2611(4)(A)'s use of the inclusive term 'and' linking clauses (i)-(iv), the Court does not agree with *Mitchell*, that Congress intended those provisions to be mutually exclusive." (citation omitted)); *Sheaffer v. County of Chatham*, 337 F. Supp. 2d 709, 728 (M.D.N.C. 2004) (stating that "subsection (4)(A)(ii)(I) [of the FMLA] can be read as including 'any person who acts, directly or indirectly, in the interest of an employer, including a public agency,'" and finding that "[t]he simplest reading of the statutory text compels the conclusion that public employees who act, directly or indirectly, in the interest of the public agency for which they work, may be held individually liable under the FMLA"). In addition, the Senate committee report provides some support for the proposition that public officials fall within the FMLA's definition of an "employer." *See* S. Comm. on Labor and Human Res., Family and Medical Leave Act of 1993, S. Rep. 103-3, 21-22 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 23-24, 1993 WL 22195, at *19 ("Section 101(4)(A) *defines* an 'employer' *as any public agency* as defined in section 3(x) of the FLSA, and any person engaged in commerce or in an industry or activity affecting commerce who employs 50 or more employees. . . ." (emphases added)).

This Court disagrees with the Sixth Circuit's position that the definitions of an "employer" in the FMLA and the FLSA should be interpreted differently. *See Modica*, 465 F.3d at 186 ("[S]everal courts have concluded that the term 'employer' should be

interpreted the same under both statutes."); *Darby*, 287 F.3d at 680 ("Other courts have analyzed this issue by comparing the definition of employer under the FMLA to the definition of employer under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq." (footnote omitted)); *Mason*, 774 F. Supp. 2d at 366 ("[V]arious courts have concluded that the FMLA's definition of 'employer' is virtually identical to the FLSA's definition of 'employer,' and the term 'employer' should be interpreted the same way under both statutes."); *cf. Mitchell*, 343 F.3d at 832 ("[T]he FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions."). Indeed, the statute's "implementing regulations state that [§ 2611(4)] mirrors the FLSA." *Cordova v. New Mexico*, 283 F. Supp. 3d 1028, 1039 (D.N.M. 2017) (citing 29 C.F.R. § 825.104(d)); *see Darby*, 287 F.3d at 681 ("The implementing regulations of the FMLA recognize the similarities of the FMLA and FLSA definitions of employer."). While "[s]ome courts and scholars . . . have disagreed with this conclusion," *Mason*, 774 F. Supp. 2d at 374 n.127; *see, e.g., Keene*, 127 F. Supp. 2d at 775 n.2; Note, *Individual Liability Under the Family and Medical Leave Act of 1993: A Senseless Detour on the Road to A Flexible Workplace*, 63 Brook. L. Rev. 1299, 1331-35 (1997), the Court's interpretation of these statutes is consistent with the opinions of other district courts in this Circuit that "have applied the FLSA test of 'whether, as a matter of economic reality, an entity is an employer for purposes of the FLSA' to the FMLA because the FMLA definition of employer 'tracks that of the FLSA.'" *Smith*, 769 F. Supp. 2d at 475 (quoting *Augustine v. AXA Fin., Inc.*, No. 07 CIV. 8362, 2008 WL 5025017, at *3 (S.D.N.Y. Nov. 24, 2008)); *see Santiago*, 50 F. Supp. 3d at 149 (same).

Moreover, the interpretation of the FMLA is not directly at issue in the instant matter. While the cases cited above set forth persuasive reasons for the Court to reject the Sixth Circuit's construction of the FMLA's definition of an "employer," the disposition of Defendants' motion does not require this Court to reach that conclusion here. As the *Mitchell* court notes, the Sixth Circuit has simply "not addressed a textual analysis of whether *the FLSA* imposes individual liability on public agency employers." 343 F.3d at 833 n.27 (emphasis added).

Irrespective of whether *Mitchell* represents the correct interpretation of the FMLA, the factors counseling the Sixth Circuit's opinion in that case are not applicable to this Court's construction of § 203(d) of the FLSA. For example, the definition of an "employer" under the FLSA unambiguously "includes a public agency." 29 U.S.C. § 203(d). In other words, neither the structure nor the text of § 203(d) suggests that liability as an "employer" and an entity's status as a "public agency" are separate and distinct under the FLSA. Similarly, whatever significance may be placed upon the fact that the FMLA's "public agency" provision has been placed in a clause defining what an employer "includes" rather than the clause defining what an employer "means," is also irrelevant because the FLSA does not separate what an employer "means" from what it "includes." *See id.*; *cf. Mitchell*, 343 F.3d at 831 ("A definition of employer that incorporates the individual liability provision and public agency provision into a single clause is substantially similar to, if not identical, to the FLSA's definition of employer."). Accordingly, *Mitchell*'s holding is inapposite. *See Teasdell*, 2016 WL 10679536, at *6 (stating that "*Mitchell* does not control the Court's analysis" regarding the scope of the

FLSA's definition of an "employer" because the Sixth Circuit's "finding that 'the FMLA's individual liability provision does not extend to public agencies' was based on the unique structure, punctuation, and tabulation of that statute").

Finally, it bears repeating that the Sixth Circuit is of the view that the FMLA's and the FLSA's definitions of an "employer" are materially distinguishable due to the fact that the FMLA separates its individual liability and public agency provisions. *Mitchell*, 343 F.3d at 832. By contrast, the Eleventh Circuit has clearly taken the position that the term "'employer' is defined the same way in the FMLA and FLSA." *Wascura*, 169 F.3d at 686; *see id.* ("The fact that Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA means that decisions interpreting the FLSA offer the best guidance for construing the term 'employer' as it is used in the FMLA."). While Defendants "urge this Court to apply the rationale of the Eleventh and Sixth Circuits to the present case" (Dkt. 20-1 at 20), Defendants have failed to consider the competing rationales underlying the *Mitchell* and *Wascura* decisions. In other words, the application of *Wascura* in determining that the FMLA's definition of an employer is "materially identical" to the FLSA's definition of employer would be in tension with the Court's extension of *Mitchell* to § 203(d) of the FLSA, which—according to *Mitchell*—*distinguishes* itself from § 2611(4)(A) by "incorporate[ing] the individual liability provision and public agency provision into a single clause." *Mitchell*, 343 F.3d at 831.

In sum, Defendants' position that a public official cannot be held individually liable as an "employer" under the FLSA is contrary to the plain language of the statute, Defendants' reliance upon the Sixth Circuit's opinion in *Mitchell* is misplaced, and to the

extent the *Wascura* and *Welch* cases have reached a different conclusion, the Court declines to follow the Eleventh Circuit. Therefore, the Court concludes that a public-sector official may be found individually liable as an "employer" under the FLSA. Having reached this conclusion, the sole remaining issue is whether Plaintiffs have alleged sufficient facts to raise a plausible inference that Moore was their "employer" pursuant to the economic realities test.

### C.    Plaintiffs' Allegations Satisfy the Economic Realities Test

Courts apply an "economic reality" test to determine whether workers are employees, and "whether managers or owners are employers." *Irizarry*, 722 F.3d at 104. The test's four factors are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12. The Second Circuit requires a case-by-case analysis, reviewing the facts in the totality of the circumstances. *Irizarry*, 722 F.3d at 104. "This set of factors is intended to be 'nonexclusive and overlapping,' and the factors are to be applied so as 'to ensure that the economic realities test . . . is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA.'" *Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513, 521 (S.D.N.Y. 2014) (quoting *Irizarry*, 722 F.3d at 105).

Plaintiffs' amended complaint has plausibly alleged sufficient factual allegations that Moore was an employer under the FLSA. In particular, Plaintiffs allege that Moore: (1) "Approve[d] or disapprove[d] the hourly rate request for inspection services"; (2) "Signed the Plaintiff[s'] paychecks"; (3) Required Plaintiffs and other Town employees

"to complete a weekly report, documenting what was being worked on every 15 minutes of the workday and to submit the reports to the Supervisor's Office"; (4) Required Plaintiffs and other Town employees to attend a "'sensitivity session' training"; and (5) Had the authority to hire and fire engineering inspectors and exercised that authority by terminating Plaintiffs from their positions with the Town. (*See* Dkt. 18 at 11-12). These allegations demonstrate substantial control over the nature and conditions of Plaintiffs' employment. *See Tapia v. Be Optical LLC*, No. 16-CV-5555 (FB) (SMG), 2018 WL 2078478, at *4 (E.D.N.Y. Feb. 13, 2018) (stating that the "plaintiff's complaint alleges that defendant Faraonov exercised substantial control over employees like plaintiff: Faraonov is alleged to have hired, fired, assigned work to, and supervised employees such as plaintiff, and to have maintained the payroll records and determine the pay practices at Be Optical"), *report and recommendation adopted*, No. 16-CV-5555 (FB) (SMG), 2018 WL 2995608 (E.D.N.Y. June 14, 2018); *Perez v. Westchester Foreign Autos, Inc.*, No. 11 CIV. 6091 (ER), 2013 WL 749497, at *8 (S.D.N.Y. Feb. 28, 2013) (finding the plaintiffs' complaint to be sufficient where it alleged that the individual defendants maintained "input and control over the policies and practices of [the employer entities]" and that the individual defendants held "the power to hire and fire employees, and to determine the manner in which [the p]laintiffs were compensated"); *Severin v. Project OHR, Inc.*, No. 10 CIV. 9696 (DLC), 2011 WL 3902994, at *6 (S.D.N.Y. Sept. 2, 2011) (denying the motion to dismiss where the plaintiffs asserted that the individual defendant "had actual influence over hiring and firing decisions, and the terms of their employment").

Although Defendants appear to argue that Moore did not have direct control over Plaintiffs' work schedule since Plaintiffs allege that the Town Engineer usually directed their work priorities, direct contact between the alleged FLSA employer and the plaintiff employees is not required. "[O]perational control of the company's employment of the plaintiff employees 'does not mean that the individual "employer" must be responsible for managing plaintiff employees—or, indeed, that he or she must have directly come into contact with the plaintiffs, their workplaces, or their schedules. . . .'" *Ramirez*, 35 F. Supp. 3d at 533 n.3 (quoting *Irizarry*, 722 F.3d at 110); *see Leal v. Masonry Servs., Inc.*, No. 12-CV-588 (DLI) (VVP), 2013 WL 550668, at *4 (E.D.N.Y. Feb. 12, 2013) (rejecting the defendants' argument that the plaintiff "does not sufficiently allege that the Moving Defendants had direct contact or day-to-day involvement with Plaintiff," and concluding that the "allegations of operational control, on their own, are sufficient"); *see also Herman*, 172 F.3d at 140 (rejecting the argument urged by the chairman that "only evidence indicating his direct control over the [company's security] guards should be considered," because "[s]uch a contention ignores the relevance of the totality of the circumstances in determining [his] operational control of [the company]'s employment of the guards").

Defendants also rely upon an out-of-circuit district court decision from the Southern District of Ohio for the proposition that Moore did not have "the authority to control Plaintiffs' work relationship without collective action from the Town Board." (Dkt. 20-1 at 19); *see Millington v. Morrow Cty. Bd. of Comm'rs*, No. 2:06-CV-347, 2007 WL 2908817, at *14 (S.D. Ohio Oct. 4, 2007) ("[I]t is not the individual commissioners who had the authority to hire plaintiff, set his salary, or dictate policy regarding overtime or

other terms of his employment or his job functions. Rather, the commissioners can only act collectively as the Morrow County Board of Commissioners."). However, *Millington* involved competing motions for summary judgment, not a motion to dismiss where a plaintiff's factual allegations are taken as true. Whether or not Moore was, in fact, constrained by the collective action of other elected officials is a factual issue that is not appropriately addressed on this motion to dismiss. At least at this stage of the litigation, Plaintiffs' allegation that Moore "took actions usually reserved for 'employers,'" and that those actions included the decision-making conduct discussed above, is sufficient to allege some modicum of independent control that distinguishes this case from *Millington*. Indeed, Plaintiffs specifically alleged that Moore required them "to complete a weekly report, documenting what was being worked on every 15 minutes of the workday and to submit the reports to the Supervisor's Office," and further required Plaintiffs to attend certain training sessions. (Dkt. 18 at 11). These allegations raise a plausible inference that Moore maintained operational control and supervision over Plaintiffs' work schedule. *See generally Ocampo v. 455 Hosp. LLC*, No. 14-CV-9614 (KMK), 2016 WL 4926204, at *7 (S.D.N.Y. Sept. 15, 2016) (finding that "the 'economic realities' as pled by Plaintiffs plausibly support an inference that Franchisor Defendants exerted control over Hotel employees," where the plaintiffs alleged, *inter alia*, that the defendants imposed "training and recordkeeping requirements" and monitored the Hotel employees); *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 207 (S.D.N.Y. 2014) (considering an allegation that the defendants "monitored employee performance" in determining whether a sufficient degree of control had been alleged).

Defendants also contend that Moore's "ministerial act of signing [Plaintiffs'] paychecks" is an insufficient detail in determining whether Moore set their "rate and method of pay." (Dkt. 20-1 at 18). However, Defendants are again mistaken. The Second Circuit has stated that in determining whether the economic realities test is satisfied, a "key question is whether [the purported employer] had the authority to sign paychecks throughout the relevant period." *Herman*, 172 F.3d 132, 140 (2d Cir. 1999). Plaintiffs allege that Moore signed off on their paychecks and approved hourly rate requests for inspection services. (Dkt. 18 at 11). These allegations sufficiently satisfy the third *Carter* factor. *See Magnuson v. Newman*, No. 10 CIV. 6211 (JMF), 2013 WL 5380387, at *9 (S.D.N.Y. Sept. 25, 2013) (noting that the defendant "was undeniably involved in determining the method of payment, as he signed Plaintiffs' paychecks, which supports a finding in favor of Plaintiffs on the third *Carter* factor"); *cf. Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013) ("While Hill alleged that Walker had the authority to fire her, she did not plead that Walker controlled her compensation or made the decision not to pay her for accrued compensatory time.").

Lastly, even if Plaintiffs have not alleged that Moore maintained employment records outside of the weekly reports submitted to his office, all four *Carter* factors need not be satisfied to establish an individual as an "employer" under the FLSA. *See Herman*, 172 F.3d at 140 ("[T]here is no evidence that [the individual defendant] was involved in maintaining employment records[, b]ut that this fourth factor is not met is not dispositive."); *Zu Guo Yang v. Shanghai Cafe Inc.*, No. 10 CIV. 8372 (LLS), 2011 WL 1118832, at *3 (S.D.N.Y. Mar. 24, 2011) (determining that the plaintiff established the

individual defendant as an "employer" even though "[t]he amended complaint does not allege that [the individual defendant] maintained employment records"); *accord Chan v. Triple 8 Palace*, No. 03 CIV. 6048 (GEL), 2004 WL 1161299, at *1 (S.D.N.Y. May 24, 2004) (stating that "all four factors need not be present to justify a finding of 'employer' status" under *Herman*).

Accordingly, Plaintiffs have set forth sufficient factual allegations that Moore was an employer under the FLSA.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 20) is granted insofar as Defendants seek dismissal of Plaintiffs' claim for unjust enrichment and to the extent Defendants seek to dismiss claims against Moore in his official capacity, but it is otherwise denied. Plaintiffs' FLSA claims against Moore in his individual capacity and the Town may proceed, and the Clerk of Court is directed to amend the caption to state that Moore is being sued in his individual capacity and delete the reference to "his official capacity as supervisor, Town of Henrietta."

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:       September 28, 2018
             Rochester, New York